IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LAVONTE DEWAYNE WILLIAMS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:20-CV-183-Z-BR |
| BRYAN COLLIER and KEN PAXTON, | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT DEFENDANTS BRYAN COLLIER AND KEN PAXTON'S JOINT MOTION TO DISMISS**

Lavonte Dewayne Williams (a.k.a. "Muhammad Abdul al Haadi") ("Plaintiff") filed a civil rights Complaint pursuant to 42 U.S.C. section 1983, alleging Defendants violated the First Amendment and also violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by denying him a legal name change and denying him unrestricted use of his religious name on all prisoner correspondence. (ECF 1). Plaintiff challenges the enforcement Texas Family Code section 45.103 as applied to religious name changes for convicted felons. *Id*. On April 27, 2020, Plaintiff filed an Amended Complaint, renewing his claims, and naming as Defendants Bryan Collier, Executive Director of the Texas Department of Criminal Justice ("TDCJ") and Ken Paxton, Texas Attorney General. Plaintiff is currently incarcerated in the TDCJ Clements Unit and complains of statewide TDCJ policies and enforcement of Texas Family Code statutory provisions, as applied to him throughout his TDCJ incarceration and specifically at the Clements Unit.

Defendants Collier and Paxton filed a Joint Motion to Dismiss and Brief in Support, arguing that Plaintiff lacks standing to sue Ken Paxton and that Plaintiff has failed to state a claim

upon which relief can be granted against Defendant Bryan Collier. (ECF 19). Plaintiff filed an Objection to the Motion to Dismiss. (ECF 30). Plaintiff also filed a Motion for Default Judgment against both Defendants. (ECF 21).

The undersigned United States Magistrate Judge is of the opinion that Defendants Collier and Paxton's Joint Motion to Dismiss should be GRANTED, and Plaintiff's Complaint should be DISMISSED with prejudice.

## I.     FACTUAL BACKGROUND

Plaintiff is a Sunni Muslim of the "Hanafi" belief system. (ECF 13 at 4). As such, his religious belief system requires him to bear his Islamic name, "Muhammad Abdul al-Haadi." *Id*. On December 12, 2017, Plaintiff requested that the TDCJ unit administration department and mailroom records department recognize his Muslim given name and allow him to correspond under that name. (ECF 1 at 4). The mailroom acknowledged his new name and allowed Plaintiff to receive religious incoming mail under his religious name. *Id*.

Plaintiff was then told by another Muslim that he must have his Muslim name legally recognized by the State of Texas. *Id*. Plaintiff states that he was informed by the TDCJ prison law library staff that Texas Family Code section 45.103 prohibits incarcerated felons from obtaining a legal name change. (ECF 13 at 4). Despite this, Plaintiff indicates that on November 21, 2018, he applied for a legal name change with the City Court of Palestine, Texas[1] but that court denied his application. *Id*. Plaintiff states that he believes other prisoners have been legally able to change their names to their religious names; thus, he argues there is no security concern in allowing a prisoner to legally change his name. *Id*. Plaintiff filed a grievance on September 9, 2018, and was

---

[1] Plaintiff also indicates, by his original Complaint, that he submitted his application to the Anderson County Clerk's Office, rather than the City Court of Palestine. (ECF 1 at 4). In either event, the Court accepts as true for purposes of the Motion to Dismiss that Plaintiff attempted to legally change his name, but a court denied his application pursuant to Texas Family Code section 45.103.

then approved to use his religious name within the TDCJ system. (ECF 1 at 4).

Plaintiff also claims, without citing to any legal authority, that he could be subject to a Class B misdemeanor charge if he uses his religious name (if perceived to be an "alias") while incarcerated and he "fears" receiving an additional charge. (ECF 13 at 4). However, he acknowledges that he receives and sends legal mail under his religious name, and that:

> From middle [sic] of 2017 until present [filing of complaint] I've been able to send mail and receive mail (religious and secular) with Islamic name outside the envelope in conjunction with commitment name with no security concern(s) but, I'm still denied legal recognition by the State of Texas and therefore denied [sic] right of expression by Government officials. Since filing my internal complaint [grievance] I've been allowed to sign legal "internal" documents, grievances etc. with my Muslim name on them…I can use my Muslim name on (all) outgoing mail.

(ECF 1 at 4).

Plaintiff argues that the Texas Family Code provision violates his First Amendment right to practice his Islamic religion because it fails to provide a religious exemption to felons. (ECF 13 at 4). Plaintiff claims that Defendant Ken Paxton would "punish" any incarcerated person (with a Class B misdemeanor, but Plaintiff fails to list the Criminal Code provision) if they used a religious alias. *Id*. Plaintiff claims that Defendant Bryan Collier unlawfully claimed a "security concern" in allowing Plaintiff to change his name. *Id*. Plaintiff seeks declaratory and injunctive relief, as well as costs of court. *Id*. at 5.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff contends that his federal constitutional rights were violated in the following ways:

1. Plaintiff's First Amendment rights were violated by the denial of a legal name change pursuant Texas Family Code section 45.103; and

2. Defendants Paxton and Collier violated RLUIPA by refusing Plaintiff unrestricted use of his religious name in his correspondence and prison filings.

(ECF 1 at 4; ECF 13 at 3–5).

### III.  STANDARD OF REVIEW

**A. Defendant Paxton's Motion to Dismiss on Lack of Standing (Rule 12(b)(1))**

Federal courts are courts of limited jurisdiction. *See* U.S. CONST. ART. III, § 2, CL. 2. A federal district court only has the power to make decisions on the merits of a case when jurisdiction arises under the constitution and is conferred by Congress in a federal statute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A plaintiff who sues in federal court has the burden to prove that the district court has jurisdiction over the alleged controversy. *Kokkonen*, 511 U.S. at 377. The basis for subject matter jurisdiction should affirmatively appear in the plaintiff's pleading in the form "of a short and plain statement" asserting the court's jurisdiction. *See* FED. R. CIV. P. 8(a)(1).

However, allegations made in a complaint by a pro se plaintiff are liberally construed and held to a less stringent standard than those drafted by a lawyer. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002). "If a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged satisfy jurisdictional requirements." *Margin v. Sea–Land Serv., Inc.*, 812 F.2d 973, 976 (5th Cir. 1987) (citing *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980)).

Federal Rule of Civil Procedure 12(b)(1) addresses a district court's ability to hear a case and make any determinations on the merits. *See* Fed. R. Civ. P. 12(b)(1). A district court's basis to dismiss for "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161 (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659

(5th Cir. 1995)). Thus, a district court can look outside of the complaint to determine facts relevant to subject matter jurisdiction. *See Williams v. Wynee*, 533 F.3d 360, 365 n.2 (5th Cir. 2008); *Ramming*, 281 F.3d at 161. This Court will consider all of Plaintiff's pleadings and filings to determine whether facts exist to support the Court's subject matter jurisdiction. *See Williams*, 533 F.3d at 365 n.2; *Ramming*, 281 F.3d at 16.

When assessing jurisdiction, the district court accepts a plaintiff's allegations in the complaint as true and may resolve undisputed facts. *See Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). A plaintiff, as the party asserting jurisdiction, bears the burden of proof for establishing federal court jurisdiction. *Life Partners, Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). In the end, a court should "dismiss for lack of subject matter jurisdiction … only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Choice Inc. of Texas*, 691 F.3d at 714 (quoting *Ramming*, 281 F.3d at 161). Without subject matter jurisdiction a district court can only decide that it does not have jurisdiction and nothing more. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998); *McDonal v. Abbott Laboratories*, 408 F.3d 177, 182 (5th Cir. 2005).

When a case is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court need not address any challenges to the merits, such as a defendant's attack pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Thus, this Court will follow the Fifth Circuit's directive:

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. (citations omitted). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.

*Id.* (citations omitted).

A plaintiff who files a complaint and seeks review of agency action "invok[es] federal jurisdiction" and therefore "bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 517–18 (2007). To show standing, a plaintiff must show that he:

(1) suffered an injury in fact;

(2) that is fairly traceable to the challenged conduct of the defendant; *and*

(3) that is likely to be redressed by a favorable judicial decision.

*Gill v. Whitford*, ––– U.S. –––, 138 S. Ct. 1916, 1929 (2018) (emphasis added). The standing doctrine "is not just an empty formality" that a court can ignore when a case seems important. *Lujan*, 504 U.S. at 581 (Kennedy, J., concurring in part and concurring in the judgment). The elements of standing go to the very core of judicial power. Without standing, a court has no authority to render a decision on the merits of a case. *See id*.

Federal courts are vested with the "judicial power" to resolve "cases" or "controversies." U.S. CONST. ART. III, § 2. When resolution of a case or controversy requires assessing the lawfulness of an executive regulation, courts do so. *See Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 314–15 (2014). But when a plaintiff lacks standing, the resulting litigation cannot be fairly called "a case or controversy," *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011), and the court has no "power to declare the law." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quotations omitted). "For the federal courts to decide questions of law arising outside of cases and controversies would be inimical to the Constitution's democratic character." *Ariz. Christian Sch. Tuition Org.*, 563 U.S. at 132. It would improperly transform courts into "roving commissions assigned to pass judgment on the validity of the Nation's laws"

and agency actions. *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973).

### B. Defendants' Joint Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Ruiz v. Brennan*, 851 F.3d 464 n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 555–56, "Factual allegations must be enough to raise a right to relief above the speculative level . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s pleading standard does not require detailed factual allegations, but it demands more than labels and

conclusions. *See Iqbal*, 556 U.S. at 678. A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

### IV. MERITS

Plaintiff alleges Defendant Paxton committed violations of the First Amendment and RLUIPA based on his ability to enforce Texas Family Code section 45.103. (ECF 1 at 4; ECF 13 at 3–5). Plaintiff further alleges that Defendant Collier committed violations of the First Amendment and RLUIPA based on TDCJ regulations regarding prisoner correspondence. *Id*. The Court will turn first to Plaintiff's standing to sue Defendant Paxton.

**A. Standing (Defendant Paxton) –** *Ex Parte Young Doctrine*

The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment not only bars liability, but it also bars suit as to claims against the State absent a waiver of immunity. *Ex parte Young*, 209 U.S. 123 (1908). Thus, a plaintiff must show that he has standing to assert his claims and that they are not barred by immunity. *See Hall v. Tex. Comm'n on Law Enforcement*, 685 Fed. App'x 337, 340 (5th Cir. 2017). An exception to Eleventh Amendment immunity exists with respect to claims against state officials for prospective injunctive relief. *Kentucky*, 473 at 159–60. To succeed on claims for injunctive relief, a plaintiff must satisfy the following three elements to show standing: (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to satisfy the redressability requirement, a plaintiff must show (1) the ability of the official to enforce the statute at issue under his statutory or constitutional power, and (2) the demonstrated willingness of the official to enforce the statute. *Okpalobi v. Foster*, 244 F.3d 405, 425–27 (5th Cir. 2001). In *Okpalobi*, abortion providers sued

the Governor and Attorney General of Louisiana while challenging the constitutionality of a statute holding them liable to patients in tort for any damage occasioned by abortions. The Fifth Circuit held that the abortion providers lacked standing to sue the Governor and Attorney General because these defendants did not cause any injury to the plaintiffs and they could not redress the alleged actual or threatened injury. *Id*. at 426–27. Also, in the context of RLUIPA, the Fifth Circuit found that claims for injunctive relief against a TDCJ Coffield Unit employee were properly dismissed because the employee did not have the power to redress the injuries alleged. *McCreary v. Richardson,* 738 F.3d 651, 655 (5th Cir. 2013).

Here, Plaintiff has entirely failed to allege that, even if Defendant Paxton, the Texas Attorney General, had the duty to enforce Texas Family Code section 45.103, he has demonstrated a willingness to enforce the statute in question. *See Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Plaintiff's sole allegation is that the City Court of Palestine twice denied his application for a legal name change, based on the Texas Family Code. (ECF 1 at 4, ECF 13 at 4). Although Plaintiff argues that Defendant Paxton could prosecute him for a Class B misdemeanor, he fails to allege any claim that such proceeding has been threatened or initiated, especially in light of his acknowledged use of his religious name on all correspondence, internal filings, and daily dealings within TDCJ since late 2017. *Id*. "The requirement that there be some actual or threatened enforcement action before *Young* applies has been repeatedly applied by the federal courts." *Okpalobi*, 244 F.3d 415. As evidenced by the Seventh Circuit opinion in *Doe v. Holcomb*, a Plaintiff seeking declaratory and injunctive relief against a state governor, state attorney general, or executive director of a state court system based on enforcement of a name-change statute must show a demonstrated willingness by the named defendant to enforce a name-change statute. 883 F.3d 971 (7th Cir. 2018), *cert. denied*, 139 S.Ct. 126 (2018) (finding *Ex Parte Young* doctrine did

not apply to waive state officials' sovereign immunity).

Plaintiff has failed to show redressability through the demonstrated willingness of Defendant Paxton to enforce the Texas Family Code, and has thus failed to plead standing to bring this claim. Additionally, as the *Ex Parte Young* doctrine does not apply to Plaintiff's claims, Defendant Paxton is entitled to immunity, and Plaintiff's claims against him should be dismissed.

### B. Failure to State a Claim (Defendant Collier)

Plaintiff alleges that Defendant Collier, through his role as the Executive Director of TDCJ, enforces and implements policies that allow for the denial of religious name usage by inmates. Specifically, Plaintiff claims that Defendant Collier interfered with Plaintiff's application to have his name legally changed in state court. (ECF 13 at 4).

#### 1. *First Amendment*

The adoption of a Muslim name is considered an exercise of religious freedom. *See Felix v. Rolan*, 833 F.2d 517, 518 (5th Cir. 1987). However, it does not follow that the failure of a state's department of corrections to recognize a religious name change will constitute a violation of the First Amendment. Texas Family Code section 45.103 provides:

> (a) The court shall order a change of name under this subchapter for a person *other than a person with a final felony conviction* or a person subject to the registration requirements of Chapter 62, Code of Criminal Procedure, if the change is in the interest or to the benefit of the petitioner and in the interest of the public.
>
> (b) A court may order a change of name under this subchapter for a person with a final felony conviction if, in addition to the requirements of Subsection (a), the person has:
>
>> (1) Received a certificate of discharge by the Texas Department of Criminal Justice or completed a period of community supervision or juvenile probation ordered by a court and not less than two years have passed from the date of the receipt of discharge or completion of community supervision or juvenile probation; or

>    (2) Been pardoned …

Tex. Fam. Code § 45.103(a)-(b) (emphasis added). The Court of Appeals for the Fifth Circuit has determined that Texas Family Code section 45.103 has a plain logical connection to a legitimate governmental interest and does not violate an inmate's free exercise of religion. *Matthews v. Morales*, 23 F.3d 118, 119–20 (5th Cir. 1994). As such, Plaintiff's First Amendment claims are frivolous and should be dismissed.

>    2.   *RLUIPA*

Plaintiff also alleges that Defendant Collier has violated RLUIPA through restrictions on religious and secular correspondence. (ECF 13 at 4). Although Plaintiff's First Amendment claim is frivolous, Plaintiff could potentially state a claim under RLUIPA. *See Shidler v. Moore*, 446 F.Supp.2d 942 (N.D. Ind. 2006) (finding that a Sunni Muslim's allegation that prison officials did not permit him to use his religious name on his mail state a claim for declaratory relief and nominal damages for a violation of RLUIPA, but did not state a First Amendment claim). However, Plaintiff has not, in fact, alleged that Defendant Collier has implemented a policy that denies him use of his religious name on his mail or in his TDCJ correspondence, despite the state court's denial of a legal name change. In fact, Plaintiff acknowledged that:

>   From middle [sic] of 2017 until present [filing of complaint] I've been able to send mail and receive mail (religious and secular) with Islamic name outside the envelope in conjunction with commitment name with no security concern(s) but, I'm still denied legal recognition by the State of Texas and therefore denied [sic] right of expression by Government officials. Since filing my internal complaint [grievance] I've been allowed to sign legal "internal" documents, grievances etc. with my Muslim name on them…I can use my Muslim name on (all) outgoing mail.

(ECF 1 at 4). Plaintiff's allegation that Defendant Collier complied with the Texas Family Code and may have informed the state court of Plaintiff's felony conviction, thereby affecting his legal name change, does not state a claim under RLUIPA.

RLUIPA provides that the government shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)–(2). To support a claim under the RLUIPA, a plaintiff must produce prima facie evidence that defendants substantially burdened his exercise of religion; he also bears the burden of persuasion on whether the policies and regulations substantially burden the same. 42 U.S.C. § 2000cc-2(b); *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004). A "religious exercise" for purposes of the RLUIPA includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A governmental action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the offender significantly to modify his religious behavior and significantly violates his religious beliefs. *Adkins*, 393 F.3d at 569-70 & n. 37. Specifically, the Fifth Circuit has stated the following:

> [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, nontrivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, government action or regulation does not rise to a level of a substantial burden on religious exercise if it merely prevents the adherent from enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Id*. at 570.

The accommodation of religious observances is not elevated over a prison's need to maintain order and safety. *Cutter v. Wilkinson*, 544 U.S. 709 (2005). Although the RLUIPA imposes the strict scrutiny standard on prisons, the courts are to apply that standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with

consideration of costs and limited resources." *Id*. at 723 (citation omitted). The Supreme Court specifically noted that "[l]awmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id*. (indicating that RLUIPA will be applied "in an appropriately balanced way, with particular sensitivity to security concerns"). The RLUIPA does not elevate accommodation of religious observances over a prison's need to maintain order, security, and safety, consistent with consideration of costs and limited resources. A prison is free to resist requests for religious accommodations that either impose unjustified burdens on other prisoners or jeopardize the effective functioning of a prison. *Id*. at 726.

### a. Substantial Burden

Plaintiff acknowledges that he is allowed to use his religious name on all incoming and outgoing mail, all internal filings, and during other interactions while housed at TDCJ. Additionally, Defendant Collier is correct in stating "it is not TDCJ policy which prevents [Plaintiff] from obtaining a legal name change, but rather the Texas Family Code." (ECF 19 at 10). Thus, no TDCJ policy is creating a burden on Plaintiff, as TDCJ allows Plaintiff full use of his religious name, in conjunction with his commitment name.

### b. Compelling Governmental Interest

Plaintiff argues that he knows of some Muslims who were convicted of felonies, but allowed to legally change their names. (ECF 13 at 4). He asserts this proves that there is no compelling governmental interest in requiring an individual to use their legal name on correspondence. However, the Fifth Circuit has found a compelling governmental interest in requiring a prisoner to also use their legal name. *See Matthews*, 23 F.3d at 119. Additionally, Plaintiff has not alleged he is not allowed to use his religious name by TDCJ; rather, he alleges

the Texas state court has refused to legally change his name. This claim implicates neither named Defendant.

### c. Least Restrictive Means

Plaintiff is allowed to use his religious name, sometimes independently on incoming mail (ECF 1 at 4) and internal documents (ECF 13 at 4) and sometimes in conjunction with his commitment name. Plaintiff makes a single statement in his Objection to the Motion to Dismiss (ECF 30 at 2) that this fails to meet the "least restrictive means" test. However, no less restrictive means would allow TDCJ, in accordance with the compelling security interest outlined above, to properly identify and track offenders as needed for classification and other penological needs. Thus, Plaintiff has not stated a claim that Defendant Collier has violated RLUIPA through creation or enforcement of any TDCJ "policy" that restricts his religious freedom to use his Muslim name.

### C. No Claim for Monetary Damages

Defendants argue Plaintiff's claims for monetary damages are barred under Eleventh Amendment Immunity and not authorized by RLUIPA. (ECF 19 at 5–6). However, in Plaintiff's Objection, Plaintiff emphasizes that he has not sought monetary damages as part of his Amended Complaint. (ECF 30 at 2; ECF 13 at 5, requesting "injunctive and declaratory" relief and costs of suit). As such, the Court finds no need to address any argument regarding the authorization for monetary damages under RLUIPA.

### D. Plaintiff's Default Judgment Motion

Plaintiff moved this Court to enter Default Judgment against Defendants. (ECF 21). Rule 55, Federal Rules of Civil Procedure, provides that where a defendant has failed to plead or otherwise defend, the Clerk shall enter the party's default. Fed. R. Civ. Proc. 55(a). Defendants in the instant case have not failed to plead or otherwise defend, and in fact, timely complied with the

Order to Answer by filing the instant Motion to Dismiss. (ECF 16, 19). As such, default judgment is not appropriate. Further, Plaintiff's motion for extension of time to respond to the Motion to Dismiss is now moot, as he filed his Objection. (ECF 29 and 30).

## V.   ORDERS

It is ORDERED that:

(1) Plaintiff's Motion to Extend Time (ECF 29) is DENIED as moot.

(2) Plaintiff's Motion for Default Judgment (ECF 21) is DENIED.

The Clerk shall terminate these docket entries.

## VI.   RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Joint Motion to Dismiss filed by Defendants Collier and Paxton be GRANTED, and Plaintiff's Complaint should be DISMISSED with prejudice.

## VII.   INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED February 2, 2021.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by

electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).